# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RICHARD ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 07 C 5161 |
| ) | |
| INTERNATIONAL TRUCK AND ENGINE ) | Judge Robert M. Dow, Jr. |
| CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant International Truck and Engine Corporation's motion for summary judgment [36], filed on May 16, 2008. Plaintiff Richard Robinson alleges that Defendant discriminated against him on the basis of his race in violation of 42 U.S.C. § 1981 and Title VII, 42 U.S.C. §§ 2000e, *et seq*. For the reasons set forth below, Defendant's motion [36] is granted.

## I. Background[1]

Plaintiff Richard Robinson was an employee of Defendant International Truck and Engine Corporation from June 25, 2004, to August 24, 2007. Plaintiff, an African-American male, has a Master's Degree in Human Resources. He began working for International at their Melrose Park plant as a Second Shift Team Advisor on a contract-to-hire basis, and was hired as a regular employee in the same position a few months later. Def. SOF ¶ 4. International's Melrose Park plant makes diesel engines for trucks and buses. As a Team Advisor, Plaintiff

---

[1] In ruling on a motion for summary judgment, the Court takes the relevant facts from the parties' respective Local Rule 56.1 ("L.R. 56.1") statements. The Court resolves all genuine factual ambiguities in Plaintiff's favor (see *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004)), and takes no position on whose version of disputed factual matters is correct.

managed approximately twenty hourly employees and was responsible for ensuring that they met certain production goals and had the necessary equipment to do so. Def. SOF ¶ 6.

In November 2005, Plaintiff was promoted to Lead Team Advisor, where he oversaw team advisors and assigned them overtime as well as specific tasks. Def. SOF ¶ 7. In February 2007, Plaintiff took over the responsibilities of a Level 6 Resource Leader, and International officially promoted him to that position in June 2007. Def. SOF ¶ 9. In that position, Plaintiff supervised Team Advisors and was responsible for the department budget and planning processes. Throughout his employment at International, Plaintiff generally worked at least seventy-five hours per week. Def. SOF ¶ 10.

On August 24, 2007, International discharged Plaintiff on the basis that he had violated the company's harassment policy by allegedly sexually harassing Tonya Hillard, a Caucasian female employee at the company.[2] Def. SOF ¶ 47. International hired Hillard in September 2004 as a production coordinator, counting cycles on production lines in all areas of the Melrose Park plant, as well as ordering materials for the production line. Def. SOF ¶ 14-16. On or around August 20, 2007, Hillard informed her immediate supervisor, Jim Galambos, that she was

---

[2] Defendant's harassment policy provides in relevant part:

> International strictly prohibits through this policy any offensive or inappropriate conduct or language that constitutes unlawful harassment as defined by the courts, any inappropriate conduct or language having sexual content, and any offensive or inappropriate conduct based on race, color, gender, national origin * * * or any other characteristic protected under federal, state or local law. All conduct deemed to be offensive or inappropriate by the company is prohibited under this policy even if it does not rise to the level of being legally actionable.
>
> The prohibited actions under this policy apply to all regular and temporary employees, contractors, vendors, customers or clients of International. No employee of International is expected to tolerate any conduct prohibited by this policy. Employees violating the policy will be subject to discipline up to and including termination.

Powelke Dep., Ex. 9. The policy also sets forth the prohibited conduct and the complaint procedures. *Id*.

uncomfortable around Plaintiff, that he had grabbed her breast on more than one occasion, and that once, in 2006, he positioned her against a conveyor belt or table and told her "I could fuck you now."[3] Def. SOF ¶ 17. Plaintiff disputes that any of the events occurred and denies that he engaged in any inappropriate conduct with Hillard or any other female employees. Instead, Plaintiff admits only to occasionally hugging female employees and telling Hillard that she probably did things with boys while in high school that she did not want to do because she was not the type of person to say no. Def. SOF ¶ 43.

Galambos reported Hillard's complaint to Defendant's human resources department, and human resources generalist Kerry Shipe entered the information into International's "My Safe Workplace" database. Def. SOF ¶ 18, 19. International then outsourced the investigation of the sexual harassment complaint to Business Controls, Inc. ("BCI"), a Littleton, Colorado based company. *Id.* BCI assigned an investigation consultant, Megan Levi, to conduct an investigation of the complaint on behalf of International. Def. SOF ¶ 20. International's policy does not require the use of an outside firm to conduct investigations into allegations of employee misconduct. Rather, the human resources department has discretion to conduct the investigation internally or to hire an outside agency. Shipe and human resources manager Tim Powelke decided to use BCI to investigate the allegations of sexual harassment lodged against Plaintiff.

Levi conducted interviews of the company's employees by telephone from her office in Colorado. Def. SOF ¶ 21. Levi interviewed several employees (including Plaintiff and Hillard) (Def. SOF ¶¶ 22-26, 31), and on August 23, 2007, reported the substance of her interviews to Shipe and Powelke. Def. SOF ¶ 34. Based on the information provided in Levi's verbal report, Shipe and Powelke concluded that Robinson had violated International's harassment policy, and

---

[3] Plaintiff's facts include slight variations of this incident. While the Court recognizes that these inconsistencies create a question as to what actually happened, the inconsistencies are not "material" to the Court's disposition.

3

Powelke decided that Plaintiff should be fired.[4]  Def. SOF ¶¶ 45, 46.  On August 24, Powelke and Shipe informed Plaintiff that BCI had completed its investigation and that International had decided to terminate his employment, effective immediately.

The written BCI investigative report, which was turned over to Defendant after the decision to terminate Plaintiff had been made, states that "[t]he information gathered through employee interviews could not definitely confirm or refute Ms. Hillard's allegations."  While various employees reported that Plaintiff was "friendly," only one of Hillard's allegations was corroborated.  Adrianna Derousse, Hillard's sister-in-law, testified that she observed Plaintiff position Hillard against a table and whisper something in her ear.  While Derousse did not hear the comment that Plaintiff made to Hillard, Derousse testified that Hillard informed her immediately following the incident that Plaintiff had made a comment similar to "I will bend you over the table right here, right now, and fuck you."  Aside from Derousse, there were no other witnesses to this incident.

In October 2006, several African-American employees wrote a memorandum to "Management of International" complaining about Jim Garner, a Caucasian supervisor.  The employees accused Garner of failing to act in a professional manner and of creating a stressful and unproductive work environment.  Defendant interviewed the employees who filed the complaint – at least one of whom reported that Garner acted like a "slave task master * * * like we all could be hung and there was nothing we could do about it" – but determined that Garner would not be disciplined.  Pl. SOF ¶ 79.  The investigation resulted in a letter of reprimand admonishing Garner for acting inappropriately.  The letter, from Charles Peal, Jon Sebastian, and

---

[4] At this meeting, they also discussed the racial graffiti that had appeared in the bathroom at the Melrose Park plant.  According to the record, the graffiti mentioned the "KKK" and doing things "Indy style," which was a reference to an ongoing hostile work environment lawsuit filed by African-American employees at Defendant's Indianapolis facility.  Plaintiff was on administrative leave when the graffiti appeared.

Kerry Shipe, also warned Garner that "further instances of this kind of behavior could lead to discipline up to and including discharge."

In September 2004, Vanessa Wilson, an African-American female, reported to Reena Davis that Joe Assaf, a Caucasian employee, had locked her in a cage and asked her to "suck his penis." Pl. SOF ¶ 84. James Marzec, a human resources manager at the time, along with "C. Luchene" (a female employee), conducted an investigation into Wilson's allegations. Marzec did not find any witnesses to corroborate Wilson's version of the events, and Assaf denied the allegations. Pl. SOF ¶ 85. Marzec ultimately concluded that there was insufficient evidence to support Wilson's claim, and Assaf was not disciplined.

## II. Analysis

### A. Summary Judgment Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette, Ind.,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Summary judgment is proper against "a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252.

No heightened standard of summary judgment exists in employment discrimination cases, nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility frequently are critical issues in employment cases that in many instances are genuinely contestable and not appropriate for a court to decide on summary judgment. See *id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

### B. Plaintiff's Title VII and Section 1981 Claims

Plaintiff contends that International discriminated against him on the basis of race when it terminated him. He seeks relief under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The applicable legal standards for race discrimination are fundamentally the same under both of these statutes. *Williams v. Waste Management of Illinois, Inc.*, 361 F.3d 1021, 1028 (7th Cir. 2004); *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996) ("Although Section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical.").

Title VII prohibits discrimination in employment: "It shall be an unlawful employment practice for an employer * * * to discharge any individual because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prove a case of discrimination under Title VII, a plaintiff may show discrimination under either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671-72 (7th Cir. 2008) (explaining the misleading nature of this nomenclature and reiterating that the direct method may be proven with either direct or circumstantial evidence and that the indirect method proceeds under the burden-shifting rubric set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)); see also *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Under the direct method of proof, the plaintiff may introduce either direct or circumstantial evidence to create a triable issue as to whether the adverse employment action was motivated by a discriminatory intent. *Id*.; see also *Isbell v. Allstate Ins. Co.,* 418 F.3d 788, 794 (7th Cir. 2005); *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). In other words, the plaintiff must show either "an acknowledgement of discriminatory intent by the defendant or circumstantial evidence that provides the basis for an inference of intentional discrimination." *Dandy v. United Parcel Service, Inc.,* 388 F.3d 263, 272 (7th Cir. 2004) (citing *Gorence v. Eagle Foods Ctrs., Inc.,* 242 F.3d 759, 762 (7th Cir. 2001)).

Under the indirect method of proof initially set forth in *McDonnell Douglas Corp. v. Green*, a plaintiff first must establish a *prima facie* case of discrimination. 411 U.S. 792, 802-04 (1973). In order to establish a *prima facie* case of race, sex, and/or age discrimination, a plaintiff must establish that: (1) he was a member of a protected class; (2) he was qualified for the job or was otherwise meeting the defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) the defendant treated similarly situated employees outside

the protected class more favorably.  See *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 538 (7th Cir. 2007).

If the plaintiff successfully establishes a *prima facie* case, a rebuttable inference of discrimination arises, and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  See *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997); see also *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007).  Once the defendant provides a legitimate explanation, the burden then shifts back to the plaintiff to prove that the proffered justification is pretext.  *Fane*, 480 F.3d at 538. To establish pretext, the plaintiff must prove, by a preponderance of evidence, either that the defendant was motivated by a discriminatory reason, or that the defendant's explanation is unworthy of credence; essentially, that the defendant's explanation is a lie.  See *Zaccagnini v. Chas. Levy Circulating Col*, 388 F.3d 672, 676 (7th Cir. 2003).  The plaintiff can accomplish this by demonstrating that the proffered reason (1) has no basis in fact, (2) did not actually motivate the adverse employment action, or (3) is insufficient to motivate the adverse employment action. *Velasco v. Illinois Dept. of Human Serv.*, 246 F.3d 1010, 1017 (7th Cir. 2001); *Cliff v. Board of School Commr's of City of Indianapolis, Ind.*, 42 F.3d 403, 412 (7th Cir. 1994).

Based on the record, Plaintiff cannot make, nor has he even tried to make, a case using the direct method of proof.  Instead, Plaintiff relies on the indirect method of proof to establish his discrimination claims.  For the purposes of this motion, the parties do not dispute that Plaintiff is a member of a protected class, that he was meeting his employer's legitimate expectations,[5] and that his termination was an adverse employment action.  The sole dispute

---

5 Because Plaintiff denies engaging in the conduct alleged by Hillard that violated Defendant's harassment policy, Defendant does not contest Plaintiff's assertion that he was qualified for his position and meeting Defendant's legitimate performance expectations.

8

between the parties is whether the fourth prong of the prima facie case is satisfied – that is, whether there were similarly situated employees outside of the Plaintiff's protected class who were treated more favorably.

"The *prima facie* case, and specifically its fourth prong, are meant to identify situations where the 'actions taken by the employer * * * if unexplained, are more likely than not based on consideration of impermissible factors.'" *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406 (7th Cir. 2007) (quoting *Collier v. Budd Co.*, 66 F.3d 886, 890 (7th Cir. 1995)). The Seventh Circuit recently has stated that the similarly situated inquiry is a "flexible one" that considers "all relevant factors, the number of which depends on the context of the case." *Id*. at 405 (quoting *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). This "*normally* entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Id*. (emphasis in original) (quoting *Radue*, 219 F.3d at 617-18); *cf. Warren v. Solo Cup Co.*, 516 F.3d 627, 630-31 (7th Cir. 2008) ("An employee is similarly situated if the employee is comparable to the plaintiff in all *material* respects") (internal citations omitted) (emphasis in original).

Regarding the relevant factors, "an employee need not show complete identity in comparing himself to the better treated employee, but he must show substantial similarity." *Radue*, 219 F.3d at 618. The "purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable." *Humphries*, 474 F.3d at 405. "The inquiry simply asks whether there are sufficient commonalities between the plaintiff and

9

the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id*.

Defendant argues that Plaintiff cannot make out a *prima facie* case of discrimination because he has failed to identify a similarly situated employee who was treated more favorably. Plaintiff comes back with two would-be comparators. Plaintiff first contends that he is similarly situated to Jim Garner, the Caucasian supervisor at International about whom employees complained in October 2006. Plaintiff attempts to inject an element of racial animus into the 2006 incident, noting that all the individuals who signed the letter were African-American and referencing one employee who reported that Garner acted like a "slave task-master." However, neither the "petition" nor the investigative report into the allegations against Garner reference racial harassment or race-based treatment. Instead, the petition and tenor of the interviews focused on Garner's intimidating personality, unprofessional direction, and harsh treatment of employees. Contrary to Plaintiff's assertion, there is no evidence that Garner was accused of violating Defendant's anti-harassment policy. Rather, the letter of reprimand specifically states that Garner's conduct was in conflict with Defendant's "Values and Guiding Behaviors," not its harassment policy. From these allegations, the Court cannot infer that Garner's conduct violated Defendant's harassment policy and was on par with, or at least substantially similar to, Plaintiff's alleged conduct.[6]

Plaintiff next claims that he was treated differently than Joe Assaf, a Caucasian tool crib attendant at International. Defendant argues that Robinson and Assaf are not similarly situated

---

[6] Moreover, Plaintiff has not presented evidence or argument regarding the decision-maker in the Garner investigation. The Court has independently reviewed the record to determine that the letter of reprimand admonishing Garner for acting inappropriately was sent by Charles Peal, Jon Sebastian, and Kerry Shipe. The parties do not dispute that Tim Powelke was the decision-maker with respect to Plaintiff's termination. See Pl. Resp. to Def. SOF ¶ 46; Shipe Dep. 44:17-20; 48:20-49:3.

because Hillard's claim that Robinson had positioned her against a table and whispered that he could "fuck [her]" was witnessed by Derousse, while there were no witnesses to the Assaf incident. Def. Br. at 5. However, the fact that Hillard's complaint was supported by a third-party witness (who also happened to be her sister-in-law) and Wilson's complaint was unsubstantiated fails to persuade the Court that the two instances were not substantially similar. To the contrary, the Court views the alleged conduct as remarkably similar, both for what was done and what was said. Both men were accused of making vulgar, inappropriate sexual advances toward their accusers in violation of International's harassment policy. The alleged physical conduct – pushing or pinning someone against a table and confining someone in a closed space by locking an exit – was similarly threatening, and the alleged propositions – "suck my penis" or "I can fuck you" – were similarly vulgar.

Perhaps sensing the limitations of its first argument, Defendant next argues that Assaf and Robinson are not similarly situated because Robinson was a supervisor at International when he was accused of sexual harassment while there is no evidence in the record that Assaf also was a supervisor. Defendant correctly notes that Plaintiff has not presented any evidence that Assaf was a supervisor nor has Plaintiff set forth Assaf's job duties or performance histories. While a plaintiff generally has the burden of demonstrating substantial similarity, in the present case, Plaintiff's failure to chronicle Assaf's job duties does not doom his position. Both men were accused of violating Defendant's harassment policy, which applies to *all* employees of International regardless of their job title or duties. Based on the Court's review of the record (without the assistance of specific citations from the parties), both employees, whether or not they had similar duties, had solid work reputations, good performance histories, and no prior disciplinary actions on file. In light of the allegations in both instances, common sense dictates

that the distinctions between Plaintiff's and Assaf's job titles or duties are not "so significant that they render the comparison effectively useless." See *Humphries*, 474 F.3d at 405.

Yet, despite the similarity in the alleged conduct and the fact that both men were subject to the same standards, the Court cannot conclude that Plaintiff and Assaf were "similarly situated." In *Ellis v. United Parcel Service, Inc.*, the Seventh Circuit affirmed a district court's grant of summary judgment in favor of the defendant on Title VII and § 1981 race discrimination claims. 523 F.3d 823, (7th Cir. 2008). The plaintiff, an African-American manager who was fired for violating the defendant's "non-fraternization" policy, claimed that he was fired because of his race and because he was married to a white woman. In affirming the district court, the Seventh Circuit found that the plaintiff's "purported comparators [were] not similarly situated to him because they were not subject to the same decisionmaker as [plaintiff] when they purportedly violated the policy." *Id*. at 826. The court determined that "to be similarly situated, [an employee] *must have been treated more favorably by the same decisionmaker* that fired [the plaintiff]." *Id*. (emphasis added). Citing its earlier decision in *Radue*, the Seventh Circuit reasoned that the plaintiff and the proposed comparator must be evaluated by the same decisionmaker because "[d]ifferent decisionmakers may rely on different factors when deciding whether, and how severely, to discipline an employee." *Id*.; see also *Radue*, 219 F.3d at 618 ("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination for the simple reason that different supervisors may exercise their discretion differently").

In this case, the parties do not dispute that Powelke, the Melrose Park plant human resources manager, made the decision to terminate Plaintiff.[7] Powelke did not assume the role of

---

[7] Shipe also was involved in Plaintiff's investigation; however, Shipe testified that Powelke made the "ultimate decision to terminate" Plaintiff. Shipe Dep. 44:17-20; 48:20-49:3. Shipe became a human

human resources manager until November 2006, after the Assaf investigation. While Powelke was a human resources generalist during the time period of the Assaf investigation, there is no evidence in the record to suggest that he had any involvement with the investigation or the decision to retain Assaf. Rather, based on the evidence submitted by the parties, it is evident that James Marzec compiled the Assaf investigation report and made the decision to retain Assaf. Plaintiff has not presented any evidence that Marzec was involved in any way with Plaintiff's investigation and termination.

Setting the investigations of harassment against Plaintiff and Assaf side-by-side, it is evident that the two incidents involved similar allegations of sexual harassment culminating in different consequences for the employees in question, but that the events were separated by three years and were judged by different decisionmakers. Even employing a flexible approach to determining whether comparators are similar-situated, the Court cannot reach the result urged by Plaintiff. While the different treatment of Assaf and Plaintiff might look inconsistent or anomalous to an outside observer, under *Ellis* and *Radue*, Plaintiff may not rely on Assaf as a comparator because the decisions to retain Assaf and to discharge Plaintiff were made by different managers who may have "exercise[d] their discretion differently." *Radue*, 219 F.3d at 618. Because "[c]ourts do not sit as super personnel departments" (*Burmmett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005)), supervisors and managers are accorded a measure of discretion in making their personnel decisions, and the fact that two different managers may arrive at different dispositions on similar fact patterns does not necessarily mean that one is right and the other wrong – or that if one was wrong, he or she acted with discriminatory intent. Consistent with that analysis, the Seventh Circuit has stressed that

---

resources generalist in 2006, after the Assaf investigation. In any event, even if Shipe were deemed to be a decisionmaker in regard to Plaintiff's termination, there is no evidence that she was involved in the decision to retain Assaf.

similarly situated comparators "must have been treated more favorably by the same decisionmaker that fired [the plaintiff]." *Ellis*, 523 F.3d at 826; see also *Humphries*, 474 F.3d at 405 (explaining that the similarly situated prong "normally entails a showing that the two employees dealt with the same supervisor"). Notably, Plaintiff has not cited, nor has the Court in its own research located, any case in which employees were found to be similarly-situated when the evidence clearly showed that the pertinent employment decisions concerning the plaintiff and the proposed comparator were made by different managers or supervisors. To be sure, because the inquiry is a "flexible" one, the Court could conceive of a departure from the rule set forth in *Ellis* if there was evidence that Defendant had engaged in manipulation of its decisionmaking personnel in an effort to shield itself from potential liability – for example, if Defendant had a policy of using a different decisionmaker for each allegation of harassment. But there is no such evidence on this record.

In view of the controlling Seventh Circuit precedent cited above, the Court must conclude that Plaintiff has not presented evidence of a similarly situated comparator that would satisfy the fourth prong of the prima facie test. Accordingly, Plaintiff has failed to establish a prima facie case of race discrimination, and summary judgment in Defendant's favor is appropriate on Plaintiff's Title VII and Section 1981 claims.

**III.     Conclusion**

For the foregoing reasons, the Court grants Defendant's motion for summary judgment [36], and judgment is entered in favor of Defendant International Truck and Engine Corporation and against Plaintiff Richard Robinson on all claims.

Dated:  March 31, 2009
                                            Robert M. Dow, Jr.
                                            United States District Judge